

DA 10-0316

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 20N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

ROGER ANDY PABLO, JR.,

      Defendant and Appellant.


APPEAL FROM:    District Court of the Twentieth Judicial District,
                      In and For the County of Lake, Cause No. DC-09-164
                      Honorable C.B. McNeil, Presiding Judge


COUNSEL OF RECORD:

        For Appellant:

            Robin A. Meguire, Attorney at Law, Great Falls, Montana

        For Appellee:

            Steve Bullock, Montana Attorney General, Jonathan M. Krauss, Assistant
            Attorney General, Helena, Montana

            Mitch Young, Lake County Attorney, Polson, Montana


                        Submitted on Briefs:  February 1, 2011

                                    Decided:  February 15, 2011


Filed:

                      _____
                                   Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     The State of Montana charged Roger Andy Pablo, Jr., in the Twentieth Judicial District Court, Lake County, with two counts of felony criminal possession of dangerous drugs: Lortab pills (Count I) and methamphetamine (Count II). Pablo filed a motion to suppress, which the District Court denied. He then entered into a plea agreement under which he pleaded guilty to Count I and the State dismissed Count II. Pablo reserved the right to appeal the denial of his motion to suppress.

¶3     On October 3, 2009, at 10:23 in the evening, Tribal Officer Casey Couture stopped a vehicle being driven by Pablo on 7th Street in Pablo, Montana. Couture stopped Pablo because the officer had "paced" Pablo's car at 29 miles per hour while following it. At the location of the traffic stop on 7th Street, there is a school and the street is posted as a 15-mile-per-hour school zone. In fact, however, the Lake County Commissioners have not established a 15-mile-per-hour school zone anywhere in Lake County. The speed limit on 7th Street was actually 25 miles per hour. Couture indicated that he likely would *not* have stopped Pablo for traveling 29 miles per hour had the officer known that the speed limit was 25 miles per hour. Couture pulled Pablo over because he believed that Pablo was exceeding a 15-mile-per-hour speed limit. There is no dispute that Couture

could have pulled Pablo over for traveling 29 miles per hour in a 25-mile-per-hour zone. However, Pablo asserted in the District Court, and again asserts on appeal, that the "pacing" method is not sufficiently accurate to establish that a motorist is only four miles per hour over a given speed limit.

¶4 Upon making the traffic stop, Couture and another officer smelled a strong odor of marijuana coming from within Pablo's vehicle and observed that Pablo was abnormally nervous and his hands were shaking. A glass pipe was in plain view inside the car. The officers asked Pablo to step out of the vehicle and then placed him in custody. After being informed of his rights, Pablo consented to a search of the vehicle. Among other items, the search turned up a plastic container containing eight pills. Pablo was arrested and transported to the Lake County Detention Center, where he admitted that the pills were Lortab, that they belonged to him, and that he did not have a prescription for them.

¶5 Montana law provides that "a peace officer may stop any person or vehicle that is observed in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense." Section 46-5-401(1), MCA. To establish particularized suspicion, the State must prove that the officer was possessed of (1) objective data and articulable facts from which he or she could make certain reasonable inferences and (2) a resulting suspicion that the person to be stopped had committed, was committing, or was about to commit an offense. *State v. Cooper*, 2010 MT 11, ¶ 7, 355 Mont. 80, 224 P.3d 636; *Brown v. State*, 2009 MT 64, ¶ 20, 349 Mont. 408, 203 P.3d 842. We review a district court's decision to grant or deny a motion to suppress to determine whether the court's underlying factual findings are

3

clearly erroneous and whether the court correctly interpreted and applied the law to those facts. *State v. Lewis*, 2007 MT 295, ¶ 17, 340 Mont. 10, 171 P.3d 731.

¶6 Relying primarily on *State v. Lacasella*, 2002 MT 326, 313 Mont. 185, 60 P.3d 975, Pablo argues that Officer Couture's mistaken understanding of the legal speed limit on 7th Street means that Couture did not have the requisite particularized suspicion to effect a traffic stop. *See Lacasella*, ¶ 30 ("[O]bservations made by an officer who does not understand the law are not objectively grounded in the law and, therefore, cannot be the basis for particularized suspicion."). The crux of Pablo's argument is this: "The only objective data was Pablo's driving 29 mph in a 25 mph speed zone. Officer Couture's belief that the speed limit was 15 mph was a mistake of law that cannot support a finding of particularized suspicion."

¶7 The State responds that regardless of Couture's "after-the-fact speculation" about whether he would have pulled Pablo over had he known that the actual speed limit was 25 miles per hour, the objective data recited by Pablo establishes that Pablo was driving 29 miles per hour in a 25-mile-per-hour zone. In other words, the objective data possessed by Couture established that Pablo was speeding, whether the limit was 15 or 25 miles per hour. Accordingly, the State contends that Couture had particularized suspicion to stop Pablo for committing an offense.

¶8 We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for noncitable memorandum opinions. Having reviewed the briefs and the record on appeal, we conclude that Pablo has not met his burden of persuasion.

4

¶9    Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS
/S/ JIM RICE